**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 7** |
| | ) | |
| **Steveland Stewart II,** | ) | |
| | ) | **CASE NO. 25-17705** |
| | ) | |
| | ) | |
| | ) | |
| DEBTOR. | ) | **JUDGE DEBORAH L. THORNE** |

**MEMORANDAM OPINION**

Chapter 7 of the Bankruptcy Code is designed for the honest but unfortunate debtor

seeking a fresh start.[1]  Most chapter 7 debtors have few nonexempt assets and often do not

have sufficient cash to pay a lawyer to represent them.  The inability to afford the assistance

of a lawyer often leads to dismissal of the case and creates obstacles to success in future

cases.[2]  Unfortunately, for the neediest, access to bankruptcy relief is challenging.  Lawyers

need to be paid, and the cross-section of desperate and financially strapped debtors needing

representation makes obtaining prepetition payment of fees a challenge.  Although the court

acknowledges the challenge faced by lawyers endeavoring to represent chapter 7 debtors,

the court must adhere to the strictures of the Bankruptcy Code.  It is not the court's role to

make policy which is the role of the legislative branch. *United States v. All Funds on Deposit*

*with R.J. O'Brien & Assocs.*, 783 F.3d 607, 627 (7th Cir. 2015); *see* also *City of Chicago, Illinois*

---

[1] *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).

[2] Debtors filing without an attorney are over nine times less likely to obtain a discharge than debtors who file with an attorney. Angela K. Littwin, *The Affordability Paradox: How Consumer Bankruptcy's Greatest Weakness May Account for Its Surprising Success,* 52 Wm. & Mary L. Rev., 1933, 1974 tbl.3b (2011).  Repeat filers must carefully seek the extension or imposition of the automatic stay. 11 U.S.C. § 362(c)(3).

*v. Fulton*, 592 U.S. 154, 166, 141 S. Ct. 585, 595, 208 L. Ed. 2d 384 (2021) (Sotomayor, J., concurring).

No matter the difficulties a debtor may be facing, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not allow payment for prepetition services after a chapter 7 bankruptcy petition has been filed.  The Supreme Court has held that attorneys' fees for work done on behalf of a chapter 7 debtor during the bankruptcy case cannot be treated as an administrative expense and paid from estate assets.[3] *Lamie v. United States Trustee,* 540 U.S. 526 (2004).  Similarly, section 523 of the Code lists claims that are not dischargeable but does not include unpaid prepetition chapter 7 attorneys' fees.  *In re Bigger,* 110 F.3d 685, 688 (9th Cir. 1997).  Even before the *Lamie* holding, the Seventh Circuit held that unpaid prepetition legal fees owed in a chapter 7 case were dischargeable under section 727. *Bethea v. Robert J. Adams & Associates,* 352 F.3d 1125 (7th Cir. 2003).

The Code and subsequent case law make it clear that a chapter 7 lawyer simply may not be a creditor for unpaid services provided before the case is filed.  It is this current state of the law that creates a problem for both the chapter 7 debtor and her lawyer.  As Judge Laurel Isicoff explained,

> currently there are four payment options available to potential chapter 7 debtors who wish to retain counsel, each with its own set of problems and challenges: (1) delay filing the case until all the fees are paid up front; (2) the lawyer can file the chapter 7 case without getting paid in full up front and hope that the debtor will voluntarily pay additional fees postpetition; (3) the attorney can bifurcate the legal services; or (4) the debtor can file a chapter 13 case instead so that the fees may be paid postpetition.

---

[3] Chapters 11, 12, and 13 allow for payment of attorneys' fees incurred during the course of the case as provided for in 11 U.S.C. §§ 330(a)(1) and (a)(4)(B).  There is no such provision for lawyers representing chapter 7 debtors.

2

*In re Brown,* 631 B.R. 77, 85 (Bankr. S.D. Fla 2021); *see also Final Report of the ABI Commission on Consumer Bankruptcy*, § 3.01, Chapter 7 Attorney's Fees at 89 (American Bankruptcy Institute, 2017-2019).  Individuals seeking a chapter 7 discharge have limited options, and lawyers attempting to assist debtors in need of relief may not offer services if the obligation requires them to become a creditor in a client's chapter 7 case.[4]  Because of the sensitive nature of this relationship, lawyers representing a debtor must file Form 2030, which discloses compensation received during the preceding year, or to be received in connection with the bankruptcy case. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b); Local Rule 2016-1, N.D. Ill. 2024.  Under §727(b), any amount unpaid for prepetition work is discharged under §727(a). *Bethea*, 352 F.3d at 1127; *In re Biggar,* 110 F.3d 685.

It is with this backdrop that the court analyzes the Semrad Law Firm's (Semrad)[5] bifurcated fee arrangements with chapter 7 debtors.  As explained below, the court finds that Semrad's fee arrangement violates Sections 526 and 528 of the Code and Local Rule 2016-1.  The court orders disgorgement of any fees Semrad received from Arnetria Bell, Cierra Blackwell-Richardson, and Steveland Stewart II.

### Background

Nearly all Semrad chapter 7 cases are filed with no money down, a benefit advertised heavily as "$0 Up-Front Bankruptcy" on its website.[6]  The court reviewed several months of

---

[4] Section 327 of the Code governs the hiring of professionals in a bankruptcy proceeding.  Professionals must be a disinterested person as defined in the Code.  Section 327 states, "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C.A. § 327(a).  The code defines "disinterested person" as "a person that is not a creditor, an equity security holder, or an insider." 11 U.S.C.A. § 101(14)(a).  Additionally, the Illinois Professional Rules of Conduct states that attorneys may not hold any interests adverse to their client. IL R S CT RPC Rule 1.7(a)(1)-(2).
[5] The Semrad Law Firm is commonly known as DebtStoppers.
[6] https://www.debtstoppers.com

Semrad chapter 7 filings and could not find any case filed after only prepetition payment of its legal fees.[7]  In each case, Semrad files the required Form 2030 but also requires debtor-clients to sign an agreement promising to pay the full amount of legal fees after the case is filed.[8]  The agreement states that if the debtor-client does not agree to payment of the post-petition fees, Semrad will file a motion seeking to withdraw its representation.

This court is mindful that prior to filing any petition for a client, a lawyer representing a potential debtor must do the following:

- Meet the client and assess whether bankruptcy is appropriate and determine what type of bankruptcy is needed (chapter 7, chapter 13, chapter 11, or perhaps just a cease-and-desist letter);

- Determine whether the potential client is eligible for bankruptcy relief;

- Obtain information concerning assets, liabilities, and additional information to prepare schedules and the statement of financial affairs;

- Ensure that debtor-client takes the creditor counseling course required under 11 U.S.C. § 109(h)(1); and

- Prepare debtor-client for responsibilities that must be undertaken to obtain discharge.

The three cases consolidated for review of the bifurcated fee arrangement are remarkably similar and although the court is addressing the disclosures made in Ms. Bell's case, the pattern the court discovered in Ms. Blackwell-Richardson's and Mr. Stewart's cases are

---

[7] In some cases, Semrad did receive funds, which it used to pay the filing fee in installments.  It appears that if it received funds in excess of the initial filing fee payment, it held the funds until the next installment.  The court does not understand why the entire amount received is not immediately turned over to the Clerk of the Court.
[8] The amounts in the consolidated cases range from $2,462 to $2,640.

identical.  In each of these cases, on the petition date, Mitchell Shanks filed over seventy pages

of schedules, the statement of financial affairs, and Form 2030, as required by the Local Rules,

stating that the representation was conditioned upon the debtor

> entering into and sign[ing] an agreement after the filing of your bankruptcy
> case to pay the Firm for services rendered after the filing of your case.  If you
> refuse to enter into and sign the agreement within ten (10) days after the filing
> of your case, the Firm will file a motion to withdraw from representing you.

(The Semrad Law Firm, Dkt. 1, ¶ 2).  Ms. Bell and the other debtors all signed this agreement

prior to their petition dates (First Agreement).  The First Agreement states that Semrad will

"be representing you in all aspects of your Bankruptcy case filed under Chapter 7 of the

United Stated [sic] Bankruptcy Code except for any adversary proceedings." *Id*. at ¶ 1.  The

First Agreement also states that after the case is filed, each debtor will be required to pay

either $2,462 in Ms. Bell's and Mr. Stewart's case, or $2,640 in Ms. Blackwell-Richardson's

case.  If this amount is not paid, Semrad will file a motion to withdraw. *Id*. at ¶ 7.  All three

debtors signed the First Agreement confirming post-petition payment.

Ms. Bell signed the First Agreement on December 4, 2025, three days prior to the

petition date. (The Semrad Law Firm, Dkt. 1).  The First Agreement lists five tasks taken on

prepetition.  It then lists nineteen tasks the firm will provide post-petition, *but only if Ms. Bell*

*pays $2,462.00*.  Paragraph 8 of the First Agreement states that Semrad will not represent the

debtor unless the debtor agrees to waive any conflict that may arise because the debtor is

required to pay post-petition fees. *Id*. at ¶ 8.[9]  Finally, paragraph 9 states, "This agreement

constitutes the entire agreement between you and the Firm.  Any previous discussions or

agreements are not valid or enforceable unless contained in this document." *Id*. at ¶ 9.

---

[9] It seems that Semrad knows there is a conflict because the majority of the legal work is done before the case
is filed.

Although Semrad filed Form 2030 stating that the case was being filed for $0.00, it conditioned any further representation for Ms. Bell on the post-petition payment of $2,462.00.  This negated the initial Form 2030 disclosure made to the court that the case was taken for no money down. (Dkt. 1).

In Ms. Bell's case, Semrad filed an Amended Disclosure of Compensation, or Amended Form 2030 (Amended Form), nearly two months later (Dkt. 15).  The Amended Form included another agreement (Second Agreement) and stated that the fee charged was now $2,462.00.  The listed tasks on the Amended Form were the same as in the initial Form 2030 but was now dated December 9, 2025 (five days after the first Form).  The Second Agreement was attached listing the tasks that Semrad would do and stating that Semrad "will forebear from requesting to withdraw from representing Client(s) so long as Client(s) signs this agreement within ten (10) days of the filing of the Case."  (Recitals, Dkt. 15).[10]

After discovering this pattern of filing amended forms and a requirement to execute the Second Agreement, the court requested an explanation.  A hearing was held on March 25, 2026.  Semrad and the Office of the United States Trustee subsequently briefed the matter.[11]  After reviewing the arguments of the parties, the papers filed, and conducting its own research, the court finds that Semrad's fee arrangement in these cases and many others violates Local Rule 2016-1 and sections 526 and 528 of the Bankruptcy Code.

---

[10] Each of the cases discussed herein have the exact same fee structure.  This odd fee arrangement led the court to scrutinize other chapter 7 petitions filed by Semrad, which uncovered many other cases with the same fee agreement.

[11] Much of Semrad's 44-page response discussed how it planned to change its method of collecting fees and not a clear defense of the facts in these three cases.  The court has continued to review chapter 7 cases filed by Semrad and has not noted a change in procedure as suggested in the Semrad response.

## Discussion

### A.  Semrad's Bifurcated Fee Arrangement

Semrad states that it represented each debtor on a bifurcated fee basis, which is "permissible so long as certain client-protective guidelines are followed." (Semrad's Response to Order, Dkt. 30 at 1).  Citing several cases,[12] Semrad argues that bifurcated fees are allowed if "the bifurcated structure [is] clearly disclosed to the client, the client [has] a meaningful opportunity to choose whether to proceed under the second agreement, the attorney . . . remain[s] counsel of record through withdrawal, and the postpetition fee [is] reasonable and correspond[s] to genuine post-petition legal services." *Id.* at 2.[13]  Semrad has accurately captured the requirements several courts have laid out, but "[t]he trick here is that the post-petition contract must really be a post-petition contract . . . [L]egally operative events—[] offer, acceptance, and exchange of consideration . . . —must in fact occur after the date of the Chapter 7 filing to qualify as a claim arising post-petition and falling outside the scope of § 362(a)(6)." *In re Griffin*, 313 B.R. 757, 769–70 (Bankr. N.D. Ill. 2004).  Again, Semrad states it will withdraw if the Agreements are not signed.

Semrad states that it consults with prospective clients for "approximately thirty minutes" during which its "most experienced attorneys spend a substantial portion of their time meeting with prospective clients, advising them regarding their options under the Bankruptcy Code, evaluating eligibility, and helping determine whether a bankruptcy filing

---

[12] Semrad cites *In re Brown*, 631 B.R. 77 (Bankr. S.D. Fla. 2021), *In re Carr*, 613 B.R. 427 (Bankr. E.D. Ky. 2020), *In re Hazlett*, 2019 WL 1567751 (Bankr. D. Utah 2019), *In re Slabbinck*, 482 B.R. 576 (Bankr. E.D. Mich. 2012), *Walton v. Clark & Washington, P.C.*, 469 B.R. 383 (Bankr. M.D. Fla. 2012), and *In re Shatusky*, 2022 WL 1599973 (Bankr. M.D. Fla. March 8, 2022).

[13] Throughout its brief, Semrad largely discusses its past practices and proposed future practices.  The court asked Semrad to explain its current practice and will not be addressing its proposed future practices.  *See generally* Semrad's Response to Order to Explain Amended Disclosure of Compensation at Dkt. 30.

is appropriate at all." (Semrad's Response to Order, Dkt 30 at 13).  Once a client agrees to

Semrad's representation, the firm completes "substantive chapter-selection counseling,

bankruptcy-options evaluation, and petition preparation" all for $0.00 "under the Pre-Filing

Engagement." *Id*. at 14.  This is all done prepetition.  The court does not believe that even the

most experienced lawyers could meet with a prospective chapter 7 debtor for only 30

minutes and carefully and accurately determine whether the client is eligible, what type of

relief would be best, prepare 70 pages of schedules, review credit reports, and provide

appropriate explanations to the debtor.  The most important services provided to any no-

asset chapter 7 debtor are those provided before the petition, schedules, and statement of

financial affairs are filed.  Afterall, these documents are signed by the debtor under the

penalty of perjury and the lawyer signs stating that the statements contained within are

accurate.[14]

### B. Semrad's Bifurcated Fee Arrangement Violates §§ 526 and 528 of the Code and Local Rule 2016-1.

Section 526 of the Bankruptcy Code states, "A debt relief agency shall not . . . make any

statement . . . that is untrue or misleading, or that upon the exercise of reasonable care, should

have been known by such agency to be untrue or misleading." 11 U.S.C. § 526 (a)(2).  Further,

section 528 states, "A debt relief agency shall . . . execute a written contract with such assisted

person that explains clearly and conspicuously the services such agency will provide to such

assisted person; and the fees or charges for such services, and the terms of payment." 11

---

[14] A lawyer signs Official Form 101 and states the following: "I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect."

U.S.C. § 528(a)(1)(A)-(B).  As described above, Semrad's prepetition contract is misleading under section 526.

The initial letter and disclosure contain contradictory statements which mislead the debtor.  The scope of representation cannot both be "in all aspects of your bankruptcy case" and conditional.  Semrad's initial Form 2030 states that it is taking on representation for the entire case, but that representation is also conditioned on an agreement to pay fees post-petition.  How can Semrad represent debtors in "all aspects of their case" but condition this upon signing a post-petition agreement?  The promise to represent clients in all aspects is conditional on payment of $2,462 or $2,640 after the filing.  If Ms. Bell and the other debtors do not agree, Semrad will not represent them and will withdraw, leaving the debtors without counsel.  This creates "a material inconsistency that makes it impossible to tell whether or when [Semrad] intended to provide services in the case . . . [and] justifies finding that the contracts are void." *In re Siegle*, 639 B.R. 755, 759 (Bankr. D. Minn. 2022) ("Agreements cannot be sufficiently 'clear' if they make inconsistent statements about what Applicant will or will not do for Debtor in her case.").  It is clear that Semrad is not taking on representation in all aspects of a client's bankruptcy case, making the First Letter Agreement inaccurate.

Perhaps more problematic is that Semrad's prepetition contract tries to circumnavigate the prohibition contained in section 526(a)(2) and the automatic stay by collecting fees post-petition for prepetition work.  It tries to divide the required tasks into pre and post-petition services. But quite obviously, the prepetition work necessary to professionally represent a chapter 7 client requires prepetition analysis and meeting with

9

the client to prepare the nearly 70 pages of schedules and statement of financial affairs.[15]  As stated, the court does not believe that this analysis, counseling, and preparation of 70 pages can be done in 30 minutes.  Using the Second Agreement to collect for prepetition services is unacceptable, since that is "merely seeking to do indirectly what is prohibited directly." *In re Brown*, 631 B.R. at 93.  This is precisely what the court believes Semrad is doing through the maze it uses to present the bifurcated agreements to clients.

While the court recognizes lawyers' need to receive payment for work done on behalf of clients, the arrangement that Semrad is using violates the Code and the Local Rules.  The preparation of schedules after counseling a client about whether a bankruptcy filing is in her best interest, which type of bankruptcy is appropriate, and helping the client understand the types of disclosures that must be made is extremely important and a time-consuming endeavor.  Although Semrad minimizes the time that this takes, this court is mindful that to do all this work correctly, time is needed, and this work is the most time-consuming task of the entire representation.  The tasks that occur post-petition are not minimal but certainly in many cases will only consist of representation at the meeting of creditors required under section 341 and ensuring that the debtor takes the final credit counseling required under section 727. 11 U.S.C. § 727(a)(11).[16]  Semrad is attempting to reconstruct the tasks that it undertakes after the preparation and filing of the petition and attempts to weigh them heavily on post-petition time.

---

[15] Each debtor signed the First Agreements—Ms. Bell on December 4, 2025, Ms. Blackwell-Richardson on July 1, 2025 (25-11248, Dkt. 1), and Mr. Stewart on November 14, 2025. (25-17705, Dkt. 1).
[16] In nearly all Forms 2030 filed by Semrad, other tasks such as representation of a client in an adversary proceeding are exempted from the representation.

Ms. Bell and the other debtors acquiesced to Semrad's demand and signed both agreements to avoid the discharge of the fees for prepetition work.  As courts within this Circuit have clearly stated, "if the debtors receive a § 727(b) discharge, pre-petition debts for legal fees, even for their own bankruptcy case, are subject to the discharge injunction of § 524." *In re Griffin*, 313 B.R. 757, 762 (Bankr. N.D. Ill. 2004) (citing *Bethea v. Robert J. Adams & Assocs.,* 352 F.3d 1125 (7th Cir. 2003)).  This court finds that Semrad's fees must be disgorged.

As Judge Isicoff stated in *Brown*, firms that enter into bifurcated fee agreements with clients must give the debtor "a separate disclosure form that discloses he or she is being provided the option to choose the bifurcated fee arrangement, and whether the bifurcated fee arrangement will have a different cost than a flat fee arrangement paid in advance of the filing." *In re Brown*, 631 B.R. at 100.  At first, it appears that Semrad is complying with this requirement by requiring the Second Agreement be signed a few days after the First Agreement. [17]  Ms. Bell's signature appears to be electronic, and there is no date next to her signature, so it is not clear when she actually signed the agreement.  Worse, the Semrad signature, if one can call it that, is illegible and does not resemble any other wet signature, such as Mr. Shank's.  Additionally, it appears to be the exact same marking as the one appearing on Form 2030 and in many other filings (Dkt. 15).  This is odd as Mr. Shanks is

---

[17] Ms. Blackwell-Richardson allegedly signed the agreement on August 8, 2025 (25-11248, Dkt. 15), and Mr. Stewart allegedly signed the agreement on November 17, 2025 (25-17705, Dkt. 1).  Like Ms. Bell, no date appears next to either debtor's name.  The same "signature" on Ms. Bell's Amended Form also appears on Ms. Blackwell-Richardson's and Mr. Stewart's.  Mitchell Shanks signed Mr. Stewart's petition, but the court cannot read the signature of the attorney who signed Ms. Blackwell-Richardson's petition, but it appears to be an actual signature.  Why does Semrad use an electronic signature when it is filing the documents and can easily provide a wet signature?

clearly the attorney who signed the prepetition agreement. The court is unsure why Semrad is signing the post-petition agreements in this manner.[18]

Although the Second Agreement states that it was signed on December 9, in Ms. Bell's case, it took two months to file the Amended Form.[19] This is a blatant violation of Local Rule 2016-1,[20] which states, "An agreement signed after the disclosure statement has been filed must be filed within 14 days as a supplement to the disclosure statement." Local Rule 2016-1, N.D. Ill. 2024. The court does not receive notice when an amended form is filed, and it cannot be tasked with combing through each of its thousands of cases to determine which are taken on a no money down basis with a contingency that would cause counsel to withdraw and leave the client unrepresented. The Amended Form 2030 appears to be slipped onto the docket with no notice to anyone and is often filed after the 341 meeting and just prior to discharge.

The threat of withdrawing when post-petition payments are not made is simply unacceptable. Failure to pay attorney's fees, on its own, is not enough for bankruptcy courts to permit an attorney to withdraw. *In re Edsall*, 89 B.R. 772, 776 (Bankr. N.D. Ind. 1988) ("[W]here the attorney-client relationship is unimpaired by the actions of the client, so that counsel is still able to effectively represent the debtor, the debtor's failure or inability to pay the attorney's fees does not constitute cause justifying withdrawal, unless the unpaid fees

---

[18] Combined with the absence of a date next to the debtor's name and the use of the electronic signature, the court wonders whether the post-petition agreement was actually executed post-petition.

[19] The petition was filed on December 7, 2026. (Dkt. 1). The Amended Disclosure was filed on February 6, 2026. (Dkt. 15)

[20] This is also a violation of the Federal Rules of Bankruptcy Procedure, which similarly state, "Within 14 days after the order for relief--or at another time as the court orders--every debtor's attorney (whether or not applying for compensation) must file and send to the United States trustee the statement required by § 329." Fed. R. Bankr. P. 2016.

are so great as to impose an unreasonable financial burden upon counsel.").   Although

Semrad and the court are aware of this requirement, debtors seeking counsel are not, and

this court finds such a statement purposefully misleading and predatory.

### C.   The Court Must Follow the Language of the Statute.

Semrad states that its compensation scheme "addresses a real access-to-justice

problem in consumer Chapter 7 practice" for "debtors whose financial distress drives them

to seek bankruptcy relief do not have those funds available." (Semrad's Response to Order,

Dkt. 30 at 2-3).   As previously discussed, the court is mindful that many debtors simply do

not have funds to pay a lawyer for representation in a chapter 7 case.   Prospective debtor

clients may be in financial and emotional crisis and often have struggled with financial

precarity for years prior to seeing a lawyer and filing a bankruptcy petition.[21]   They likely

need a discharge but have no extra cash to pay upfront.   That being said, as the Seventh Circuit

points out in *Bethea,* an "argument about what makes for good public policy should be

directed to Congress; the judiciary's job is to enforce the law Congress enacted, not write a

different one that judges think superior." 352 F.3d at 1127-28.   The court is not in the position

to legislate and must follow the law that Congress has laid out.[22]

---

[21] PAMELA FOOHEY ET AL. DEBT'S GRIP, PAGES 18 – 55, (2005).

[22] The American Bankruptcy Institute recommended several changes to improve the Bankruptcy Code.  One of those recommendations included changes to how debtors can pay for chapter 7 bankruptcy.  Its most obvious recommendation being "to make it easier for consumers to pay for their bankruptcies is to lower the cost of filing bankruptcy." *Final Report of the ABI Commission on Consumer Bankruptcy*, § 3.01 Chapter 7 Attorney's Fees at 93 (American Bankruptcy Institute, 2017-2019).  The ABI Commission recommended changes to the Code that essentially makes "chapter 7 attorney's fees nondischargeable" or "authorize attorneys for chapter 7 debtors to enter into prepetition fee agreements under which the debtor could make voluntary payments postpetition." *Id*. at 94-95.  Similarly, the National Bankruptcy Conference has proposed text to amend the Bankruptcy Code to allow bifurcation of chapter 7 fees with certain safeguards. Nat'l Bankr. Conf. Proposal, *Statutory Changes to Address the Payment of Attorney's Fees in Individual Chapter 7 Cases,* NAT'L BANKR. CONF., (Nov. 25, 2025), https://nbconf.org/our-work/#:~:text=NBC%20Proposal%20on%20Attorney%20Fees%20in%20Individual%20Chapter%207s. The Judicial Conference approved the recommendation of the Committee on the Administration of the

## Conclusion

Semrad's bifurcated fee arrangement violates Sections 526 and 528 of the Code and Local Rule 2016-1.  Semrad is ordered to disclose the amount of post-petition fees received and disgorge all post-petition payments, if any, received from Ms. Bell, Ms. Blackwell-Richardson, and Mr. Stewart.  A further status will be set for compliance.

Dated:  July 1, 2026

_____

Honorable Deborah L. Thorne
United States Bankruptcy Judge

---

Bankruptcy System and has also recommended that the Code be amended to allow bifurcation.  To date no legislation has been introduced. JCUS-SEP 2022, at p. 9.